```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       **Plaintiff,**<br><br>                  **v.**<br><br>LUIS HERNÁNDEZ-GAMBOA [1], *et al.*,<br><br>       **Defendants.** | **Criminal No.** 21-323 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Defendants Luis Hernández-Gamboa ("Hernández"), Vidal Tineo-Lunar ("Tineo"), and Edison Peña-Loboa ("Peña") (collectively, "defendants") move to dismiss the indictment for lack of jurisdiction. (Docket No. 26.) For the reasons set forth below, the defendants' motion to dismiss is **DENIED**.

**I.   Background**

This action concerns an alleged attempt to import cocaine into the United States. United States Coast Guard ("USCG") Investigative Service Special Agent Ferdinand Acosta ("Acosta") prepared an affidavit in support of the criminal complaint. (Docket No. 1, Ex. 1.) The following allegations derive from Special Agent Acosta's affidavit.

On August 21, 2021, a USCG Maritime Patrol Aircraft observed a go-fast vessel approximately 45 nautical miles southwest of Isla

Criminal No. 21-232 (FAB)                                                         2

Saona, Dominican Republic.  Id. at p. 4.  Subsequently, USCG Cutter JOSEPH DOYLE located the go-fast vessel, which displayed no indicia of nationality.  Id.  The vessel attempted to evade interdiction, and several packages were observed being jettisoned into the ocean.  Id.  After a brief pursuit, the USCG apprehended the defendants.  Id.

Hernández claimed Venezuela nationality for himself and the vessel.  Id. at p. 5.  Tineo and Peña claimed Venezuela and Colombia nationality, respectively.  Id. at p. 6.  USCG Guardsmen located a 9mm Glock pistol onboard the defendants' go-fast vessel.  Id. at p. 5.  An IOSCAN scan tested positive for the presence of cocaine.  Id.  Moreover, the abandoned packages contained 78 kilograms of this controlled substance.  Id. at p. 4.

The Government of the Bolivarian Republic of Venezuela could neither confirm nor deny registry of the go-fast vessel.  Id. at p. 5.  The USCG detained the defendants.  Id.  Hernández, Tineo, and Peña appeared before Magistrate Marcos E. López on August 31, 2021 for their preliminary hearings.  (Docket No. 3.)

On September 9, 2021, a grand jury returned a three count indictment charging the defendants with conspiracy to possess with intent to distribute a controlled substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) (count one), possession with intent to

distribute a controlled substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 18 U.S.C. § 2 (count two), and jettisoning property subject to forfeiture, pursuant to 21 U.S.C. § 881(a), from a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(2), 70506(d), and 18 U.S.C. § 2 (count three).  (Docket No. 13.)

The defendants moved to dismiss the indictment for lack of jurisdiction.  (Docket No. 26.)[1]  The United States responded, and the defendants replied.  (Docket Nos. 48 and 68.)  Subsequently, the United States provided a Certification for the Maritime Drug Law Enforcement Act Case Involving Unknown Go-Fast Vessel (Twon) Federal Drug Identification Number (FDIN) – 2021749735 ("post-indictment Department of State certification").  (Docket No. 115, Ex. 1.)  This certification provides that:

> On or about April 26, 2022, the Government of the Bolivarian Republic of Venezuela replied that they waived their primary right to exercise jurisdiction over the vessel, cargo, and crew to the extent necessary for the enforcement of United States law.

Id. at p. 3.  The defendants moved to exclude the post-indictment Department of State certification.  (Docket No. 119.)  The Court denied this request.  (Docket No. 129.)

---

[1] Hernández moved to dismiss the indictment on November 12, 2021.  (Docket No. 26.)  The Court then granted Tineo and Peña's motions to join.  (Docket Nos. 28 and 36.)

Criminal No. 21-232 (FAB)                                                    4

**II.  Federal Rule of Criminal Procedure 12**

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a "motion that the court lacks jurisdiction may be made at any time while the case is pending."  Fed. R. Crim. P. 12(b)(2).  On a motion to dismiss, the allegations contained in the indictment are accepted as true.  See United States v. Bohai Trading Co., Inc., 45 F.3d 577, 578 n.1 (1st Cir. 1995).

The federal judicial authority extends "to all Cases, in Law and Equity, arising under the Constitution, the Laws of the United States, and Treaties made."  U.S. CONST. art. III, § 2.  This Court possesses subject matter jurisdiction in a criminal action when the indictment charges "that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes."  United States v. González, 311 F.3d 440, 442 (1st Cir. 2002); see 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of courts of the States, of all offenses against the laws of the United States.").  The defendants assert that this Court lacks subject matter jurisdiction pursuant to Article I, Section 10 of the United States Constitution.  (Docket No. 26.)

   **A.  The Maritime Drug Law Enforcement Act**

Congress enacted the Maritime Drug Law Enforcement Act in 1986 to diminish the operations of international drug

Criminal No. 21-232 (FAB)                                              5

trafficking organizations.  These evasive entities "constantly refine their methods for transporting illegal narcotics from country to country."  United States v. Carvajal, 924 F. Supp. 2d 219, 224 (D.D.C. 2013); see Lt. CDR Aaron J. Casavant, In Defense of the U.S. Maritime Drug Enforcement Act: A Justification for the Law's Extraterritorial Reach, 8 Harv. Nat'l Sec. J. 191, 199-200 (2017) (noting that Congress endeavored to "counter the traffickers' 'mothership' strategy, target[ting] the larger vessels sailing just outside U.S. territorial seas that were sending smaller, faster vessels to bring contraband ashore."). Consequently, the MDLEA is an expansive statute.  It provides that "an individual [on board a vessel subject to the jurisdiction of the United States] may not knowingly or intentionally:"

   (1) manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance;

   (2) destroy (including jettisoning . . .), or attempt or conspire to destroy, property that is subject to forfeiture under section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

48 U.S.C. §§ 70503(a)(1)-(2).  "[J]urisdictional issues arising under the [MDLEA] are preliminary questions of law to be determined solely by the trial judge," and do not constitute an element of the offense.  46 U.S.C. § 70504; see United States v. Gil-Martínez, 980 F. Supp. 2d 165, 168 (D.P.R. 2013) (Besosa, J.).

Vessels without nationality are subject to the MDLEA. Stateless vessels include, but are not limited to:

> (A)   a vessel abroad which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> (B)   a vessel abroad which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel;
>
> (C)   a vessel abroad which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality (hereinafter, "subsection (C)")

46 U.S.C. §§ 70502(d)(1)(A)-(C). Vessels subject to criminal liability also include those "registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(C); see United States v. Vilches-Navarret, 523 F.3d 1, 11 (1st Cir. 2008) (holding that a vessel "was subject to the jurisdiction of the United States" because the "Government of

Honduras had granted . . . permission to enforce U.S. law against . . . its cargo and the people on board").[2]

To facilitate expeditious consent and waiver, the MDLEA provides that the flag state may provide registry information "by radio, telephone, or similar oral or electronic means." 46 U.S.C. § 70502(d)(2).[3] A Department of State certification is conclusive proof of a nation's claim of registry. Id.; United States v. Cardales-Luna, 632 F.3d 731, 737 (1st Cir. 2011) (holding that the Secretary of State designee "need only certify that the 'foreign nation' where the vessel is registered 'has consented or waived objection'" to United States prosecution).

## III. Discussion

The defendants set forth four arguments in support of their motion to dismiss. First, they assert that Congress "exceeded the powers it was granted by the Define and Punish Clause." (Docket No. 26 at p. 11.) Second, the defendants maintain that they "made

---

[2] "Although there is a presumption that Congress does not intend a statute to apply to conduct outside the territorial jurisdiction of the United States, that presumption can be overcome when Congress clearly expresses its intent to do so." United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003) (citing Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949)); RJR Nabisco, Inc. v. European Cmty, 136 S. Ct. 2090, 2100 (2016) ("Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application,"). Congress explicitly expressed its intent that the MDLEA prohibit acts committed beyond the territorial jurisdiction of the United States, overcoming the presumption against extraterritorial application.

[3] Every vessel is required to "sail under the flag of one State only and, save in exceptional cases . . . shall be subject to its exclusive jurisdiction on the high seas." Convention on the High Seas, art. 6, Apr. 29, 1958, 13 U.S.T. 2312, 450 U N.T.S. 82.

Criminal No. 21-232 (FAB)                                              8

a verbal claim of Venezuelan nationality, not Venezuelan registry." (Docket No. 26) (emphasis omitted). Third, the defendants posit that the MDLEA is unconstitutionally vague. Id. at p. 12. Fourth, this prosecution is purportedly precluded by United States v. Dávila-Reyes, 23 F.4th 153 (1st Cir. 2022) (reh'g *en banc* granted, opinion withdrawn, 38 F. 4th 288 (1st Cir. 2022)). (Docket No. 68.)

### A.  The Piracies and Felonies Clause

"The powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten, the constitution is written." Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) (Marshall, C.J.) (invalidating a provision of the Judiciary Act of 1789). Accordingly, Congress "can exercise only the powers granted to it." McCulloch v. Maryland, 17 U.S. (4 Wheat) 316 (1819) (Marshall, C.J.).

The MLDEA derives from the Constitution's Article I, granting Congress the authority to "define and punish Piracies and Felonies committed on the high seas, and Offences against the Law of Nations." U.S. CONST. art. I, § 8, cl. 10. Since the founding of the United States, "the ability to effectively prosecute crime committed on the high seas was seen as vital to the interests of the Confederation." Adam H. Kurland, First Principles of American Federalism and the Nature of Federal Criminal Jurisprudence,

Criminal No. 21-232 (FAB)                                                  9

45 EMORY L.J. 1, 23-4 (1996) (noting that the framers convened the Constitutional Convention in part because "crimes occurring on the high seas, by definition occurred outside the territorial jurisdiction of a particular state and thus made the issue of state prosecution problematic"). In fact, the Define and Punish Clause is the "only specific grant of power to be found in the Constitution for the punishment of offenses outside the territorial limits of the United States." United States v. Suerte, 291 F.3d 366, 376 (5th Cir. 2002). The Constitution does "not explicitly require [that] a nexus between the unlawful conduct committed on the high seas and the United States be established before Congress can punish that conduct." United States v. Nueci-Peña, 711 F.3d 191, 198 (1st Cir. 2013).

According to the defendants, the "MDLEA's definition of statelessness should be narrower than or coextensive to international law's concept of statelessness." (Docket No. 26 at pp. 11-12.) They argue that this statute "extends jurisdiction over vessels that are not in fact stateless under international law." Id. at p. 12. This argument is, however, based on a false premise. The defendants' go-fast vessel is not stateless.

In United States v. Robinson, the First Circuit Court of Appeals addressed the constitutionality of the Marihuana on the High Seas Act ("MHSA"), a drug-trafficking statute with

Criminal No. 21-232 (FAB)                                               10

extraterritorial reach.  843 F.2d 1 (1st Cir. 1988) (Breyer, J.). United States law enforcement officers arrested the defendants 500 miles east of North Carolina onboard the M/V Juan Robinson, a Panamanian vessel.  Id. at 2.  The Government of Panama subsequently "permit[ted] the United States to apply its law." Id. at 4.  On appeal, the defendants argued that "Congress did not intend to exceed the bounds of international law" by enacting a statute that "forbids offshore drug possession."  Id. at 2—3.

The Robinson court upheld the defendant's conviction pursuant to the territorial principle, "a perfectly adequate basis in international law for the assertion of American jurisdiction." Id.[4]  Consent provided by the Government of Panama constituted an exception to exclusive flag state jurisdiction.  Id. ("It is clear, under international law's 'territorial principle,' that a 'state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state.") (citing RESTATEMENT (SECOND) OF

---

[4] The territorial principle provides that "a state may exercise jurisdiction with respect to all persons or things within its territory."  Benedict on Admiralty, § 112(a)(3) (2019) (hereinafter, "Benedict").  This doctrine is "the most common basis of jurisdiction over crime in the United States".  Christopher L. Blakesley, Criminal Law: United States Jurisdiction Over Extraterritorial Crime, 73 J. CRIM. L. & CRIMINOLOGY 1109, 1114 (1982).  Pursuant to the territorial principle, "ships on the high seas are regarded as [the] territory of their flag state and placed under the exclusive jurisdiction of the latter by customary international law."  Id. § 112(a)(4); United States v. Arra, 630 F.2d 836 (1st Cir. 1980) ("Vessels have the nationality of the nation whose flag they are entitled to fly . . . and are subject to [that] nation's jurisdiction when on the high seas.").

Foreign Relations Law of the United States § 3(3) (1965)). This holding is consistent with well-established precedent. See The Schooner Exchange v. McFadden, 11 U.S. (7 Cranch) 116, 136 (1812) ("The jurisdiction of the nation within its own territory is necessarily exclusive and absolute . . . All exceptions, therefore, to the full and complete power of a nation within its own territories, must be traced to the consent of the nation itself") (Marshall, C.J.); United States v. Green, 671 F.2d 46, 52 (1st Cir. 1982) (holding that the Convention on the High Seas and federal statutes provide "ample authority for the Coast Guard to board and search a foreign flag vessel [in international waters] when the flag state consents").

Courts routinely rely on the rationale set forth in Robinson, solidifying the consent exception to flag state jurisdiction. In United States v. Cardales, the crew of a "go-fast" vessel jettisoned 1080 pounds of marijuana into the Atlantic Ocean, approximately 150 miles south of Puerto Rico. 168 F.3d 548, 551 (1st Cir. 1999). The flag state confirmed "that [the vessel was of] Venezuelan registry . . . and authorized the arrest of and application of [the MDLEA]." Id. at 552. The crew members argued on appeal that "the Fifth Amendment Due Process Clause requires the government to prove a nexus between their criminal conduct and the United States." Id. Flag state consent satisfied

due process requirements, however, obviating an obligatory nexus to the United States.  Id.  In *dictum*, the First Circuit Court of Appeals observed that:

> The question of whether Congress intended to override international law is not presented here.  To the extent that international law requires a nexus to the United States, that nexus requirement is not overridden by the MDLEA, but instead is satisfied by the foreign flag nation's authorization to apply U.S. law to the defendants and by the congressional finding that drug trafficking aboard vessels threatens the security of the United States.

Id. at 553 n.2.

The circumstances before this Court are glaringly similar to the facts in Cardales.  The Government of the Bolivarian Republic of Venezuela consented to the application of United States law.  (Docket No. 115, Ex. 1.)  The defendants are foreign citizens, and interdiction occurred on the high seas.  (Docket No. 1, Ex. 1.)  Accordingly, extraterritorial jurisdiction is proper pursuant to the territorial principle.

**B.  Registry and Nationality**

Hernández, Tineo, and Peña differentiate registry from nationality, asserting that this distinction is fatal to the indictment.  Because the defendants "made a verbal claim of Venezuelan nationality," they argue, "§ 70502(d)(1)(C) is inapplicable since subsection (C) by its plain terms refers only to claims of registry."  (Docket No. 26 at p. 3.)

Criminal No. 21-232 (FAB)                                                                 13

       The defendants' argument that "nationality is separate and distinct from a claim of registry" is a *non sequitur*. (Docket No. 26 at p. 5.) According to Hernández, Tineo, and Peña, "some countries link nationality to registration, while others obviate the need for registration by extending nationality automatically to ships owned by its nationals." Id. at p. 6 (citation and internal quotation omitted). The registration requirements mandated by Venezuela is of no concern to this Court. The relevant authority is the MDLEA, not the maritime laws and customs of other countries.

       The MDLEA refers to nationality and registration in the disjunctive. For instance, the MDLEA provides that a "claim of **nationality or registry** for the vessel is made by the master or individual in charge at the time of the enforcement action." 46 U.S.C. § 70502(b)(2)(B) (emphasis added). Indeed, the "MDLEA treats the terms 'nationality' and 'registry' as interchangeable throughout § 70502." United States v. Gruezo, 44 F.4th 1284, 1291 (11th Cir. 2023); see United States v. Escalona-Reid, Case No. 20-203, 2022 U.S. Dist. LEXIS 222556, at *5 (D.P.R. Dec. 8, 2022) (Carreño-Coll, J.) (noting that "the MDLEA uses registry and nationality interchangeably"). Because nationality and registry are synonymous, dismissal of the indictment is inappropriate on this basis.

**C.   The Defendants' Constitutional Challenge**

Hernández, Tineo, and Peña raise two interrelated constitutional arguments. (Docket No. 29 at p. 12.) First, they assert that the verification procedure set forth in 46 U.S.C. § 70502 ("section 70502") is impermissibly vague. Id. Second, the defendants purport that section 70502 emboldens "arbitrary enforcement by the USCG and others tasked with enforcing the law." Id. at p. 13. Both arguments are meritless.

A statute is void for vagueness in two circumstances. First, an excessively vague statute "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." Hill v. Colorado, 530 U.S. 703, 732 (2000). Second, a statute is unconstitutional if "it authorizes or even encourages arbitrary and discriminatory enforcement." Id. Due process does not demand, however, that Congress account for every conceivable application of a law. Any statute is "susceptible to clever hypotheticals testing its reach." Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct., 894 F.3d 235, 251 (6th Cir. 2018); IMS Health Inc. v Ayotte, 550 F.3d 42, 61 (1st Cir. 2008) ("[S]tatutes do not need to be precise to the point of pedantry, and the fact that a statute requires some interpretation does not perforce render it unconstitutionally vague.").

The defendants assert that the "MDLEA's amorphous" verification procedure provides insufficient notice to "people navigating the high seas." (Docket No. 26 at p. 13.) This procedure, however, is not ambiguous: The master of the vessel makes a claim of registry; the USCG requests that officials from the purported flag state confirm or deny registration; these officials tender a response; the Secretary of State or his or her designee then memorializes this response in a certification. 46 U.S.C. § 70502(d); cf United States v. Gruezo, 66 F.4th 1284, 1292 (11th Cir. 2023) (holding that the "text of § 70502(d)(1)(B) is sufficiently clear to give ordinary people notice that, without a claim of nationality or registry for the vessel upon request, the vessel will be considered stateless for purposes of jurisdiction under the MDLEA."). A person of ordinary intelligence is fully capable of understanding this procedure.

The defendants cite Kolender v. Lawson, 461 U.S. 352 (1983), contending that the verification procedure fails to "establish minimal guidelines to govern law enforcement." (Docket No. 26 at p. 13.) In Kolender, the Supreme Court determined whether a California law transgressed the Due Process Clause. The relevant statute required "that an individual provide 'credible and reliable' identification when requested by a police officer who has reasonable suspicion of criminal activity sufficient to

Criminal No. 21-232 (FAB)                                        16

justify a Terry detention." 461 U.S. at 355-56. The Kolender court invalidated this statute, holding that it "contain[ed] no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification." Id. at 358. Police officers possessed "complete discretion . . . to determine whether the suspect" complied with the statute. Id.

Unlike the police officers in Kolender, Coast Guardsmen lack unbridled discretion to determine which vessels are subject to prosecution in the United States. In this case, Venezuela confirmed the defendant's claim of registry. (Docket No. 115, Ex. 2.) This response is final and dispositive, not subject to arbitrary interpretation by the Secretary of State. In contrast to the "credible and reliable" identification requirement in Kolender, consent and waiver provided by the Government of the Bolivarian Republic of Venezuela is not open to interpretation. Indeed, a district court in this jurisdiction recently denied an identical motion to dismiss an MDLEA case. See Ceballo, 2022 U.S. Dist. LEXIS 198342, at *15 (denying the defendant's motion to dismiss, holding that Kolender is inapplicable because "[there] is no wiggle room about what response the government needs from the claimed flag state to exercise jurisdiction"). Consequently, the defendants' constitutional challenge is unconvincing.

### D.   **United States v. Dávila-Reyes is Inapplicable**

The defendants seek refuge in inapplicable precedent. They contend that Dávila-Reyes "directly controls the outcome of this case." (Docket No. 101 at p. 2.)  The Court disagrees with this proposition.

In Dávila-Reyes, the First Circuit Court of Appeals held that the phrase "vessels without nationality" is coextensive with the "international law definition of statelessness."  23 F.4th at 172.  A defendant "claimed Costa Rican nationality for [his] vessel but did not provide any documentation to support that claim."  Id. at 158.  Costa Rica officials could neither confirm nor deny the vessel's registry.  Id. at 159.  Consequently, law enforcement officers determined that the vessel was "without nationality and subject to U.S. jurisdiction" pursuant to subsection (C).  Id.

On appeal, the defendants argued that "their vessel was not properly deemed stateless."  Id. at 170.  The Dávila-Reyes court agreed, holding that subsection (C) is inconsistent with international law.  Id. at 188.  Pursuant to the latter, a master's verbal declaration of registry establishes a presumption of nationality.  Id. at 188-89.  ("Rejecting a verbal claim of nationality based on the lack of substantiating evidence [*i.e.* confirmation of registry from Costa Rica] negates that distinct

Criminal No. 21-232 (FAB)                                               18

method for claiming nationality recognized both by the MDLEA and by international law.").

The First Circuit Court of Appeals withdrew the Dávila-Reyes decision on July 5, 2022, however, to conduct an *en banc* review of subsection (C).  United States v. Reyes-Valdivia, 38 F.4th 288 (1st Cir. 2022).  Accordingly, Dávila-Reyes is no longer binding on this Court.  See Escalona-Reid, 2022 U.S. Dist. LEXIS 222556, at *3 ("So although we write in the shadow of Dávila-Reyes, it has no weight here.").

Oral argument occurred ten months ago, on October 18, 2022.  Reyes-Valdivia, 38 F.4th 288.  A disposition has yet to issue, placing subsection (C) and defendants facing prosecution pursuant to this provision in purgatory.  In any event, the impending *en banc* decision cannot shield Hernández, Tineo, and Peña from prosecution.  The defendants' go-fast vessel is **not** stateless.  The plethora of authority concerning flag state consent from this jurisdiction remains intact until and unless the First Circuit Court of Appeals, the Supreme Court, or Congress determines otherwise.

**IV.  Conclusion**

For the reasons set forth above, the defendants' motion to dismiss is **DENIED**.  (Docket No. 26.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 14, 2023.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE
